## Owens vs. The City of Milwaukee.

REGRADING STREETS IN MILWAUKEE. *(1) Lot-owner's remedy for injury to lot. (2) Estoppel against recovery of damages for illegal acts. (3, 4) When lot-owner cannot recover for filling in front of his lot upon illegal order. (5) Assessments for city improvements: what irregularities a ground of action.*

1. Owners of lots in Milwaukee, injured by a change regularly made since ch. 129, Laws of 1873, in the established grade of an adjoining street, cannot bring an original action in the circuit court for such injuries; but must proceed by appeal, within the time limited by that act, from the assessment of benefits and damages made by the board of public works.
2. One cannot recover of a municipality damages for illegal acts of its officers, if, with knowledge of their illegality, he has assisted in their performance.
3. The common council of Milwaukee, claiming to act under said ch. 129, changed the established grade of a street, and ordered it to be filled to the new grade; but the order was void for irregularity of the proceedings upon which it was made. Plaintiff, in accordance with such order, filled said street to the new grade in front of his own lot fronting thereon. In an action for the value of such filling, and for injury to the lot from the change of grade: *Held*,

    (1) That if plaintiff did the work knowing that the order was void, he cannot recover therefor.

(2) That if he did it believing that the proceedings were legal, then, from his failure to appeal from the assessment of benefits and damages made by the board of public works, it must be presumed that he was satisfied with such assessment, by which it was decided that the benefits to the property were a full compensation for the work.

(3) That if he did it without taking any measures to ascertain whether the proceedings were regular, he must still be held to have thereby agreed to take, for his expenditures and damages, the compensation awarded by the officers, viz., the benefits to the property.

4. The case of *Dore v. Milwaukee*, 42 Wis., 108, distinguished.

5. Under ch. 322 of 1875, the board of public works of Milwaukee was authorized to cause the street on which plaintiff's lot fronts, to be paved with wooden block pavement, without petition of the lot-owners therefor, or resolution of the common council authorizing it; one-third of the cost being required to be assessed against the lots fronting on such street, and two-thirds paid out of the ward fund. The complaint alleges, as to the repaving of said street upon the new grade, that some of the lots were assessed more than others, and the assessments were made arbitrarily; but does not allege that more than one-third of the cost was charged to the lots, or more than two-thirds to the ward fund; nor that plaintiff's lot was assessed for more than its just proportion of the whole cost of the work. *Held*, that it does not show any injury to plaintiff.

APPEAL from the County Court for *Milwaukee* County.

The case is thus stated by Mr. Justice TAYLOR:

" This action is brought by the plaintiff against the city of Milwaukee to recover for the expenses of raising the grade of the street in front of the plaintiff's lot in said city, and for damages to said lot by reason of changing the grade and filling the street up to such new grade.

" The plaintiff alleges that the grade of said street had been fixed and established in 1853, and the street graded in accordance therewith and paved, and that afterwards, in 1873, the common council of said city, pretending to act under the provisions of section 6, ch. 129, Laws of 1873, changed such established grade and raised the same several feet in front of said lot, and ordered such street to be filled in front thereof up to such new grade; that, in pursuance of such order, the plaintiff filled the street in front of his lot up to such grade;

that afterwards the said city, pretending to act under the provisions of chapter 322, Laws of 1875, caused said street to be repaved, and plaintiff was compelled to pay a part of the expense of repaving the same; and that the expense of filling and paving was about the sum of $300. The complaint sets out the proceedings of the common council and of the board of public works, relative to the establishment of such new grade and the filling and paving of the same; from which proceedings, as set out in the complaint, it is apparent that so much of them as relate to the proceedings under which it is claimed the work of filling the street up to the new grade was ordered, were entirely void; but, as we shall hereafter show, the subsequent proceedings for paving the street were apparently valid and regular. The plaintiff claims as damages the said sum of $300, the cost of filling and paving said street, and the further sum of $1,000 as damages to his lot occasioned by reason of filling such street up to the new grade.

" To this complaint the city demurred, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained by the court below, and the plaintiff appealed."

*Frank B. Van Valkenburgh*, for the appellant.

*D. H. Johnson*, for the respondent.

TAYLOR, J. In order to understand the grounds of the defendant's demurrer, it becomes necessary to state some of the provisions of the charter of the city which have a direct bearing upon the questions raised by said demurrer.

Section 18 of subch. 10 of ch. 56, Laws of 1852, which is an act to consolidate and amend the charter of the city of Milwaukee, provides for the establishment of the grade of all the streets, sidewalks and alleys in said city, and that " when the grade so established shall be thereafter altered, all damages, costs and charges arising therefrom shall be paid by the city to the owner of any lot or parcel of land or tenement which

may be affected in consequence of the alteration of such grade."

Section 3, ch. 401, P. & L. Laws of 1870, provides that whenever the board of public works of the city of Milwaukee shall deem it necessary to grade or otherwise improve any street, alley, sidewalk or public ground, they shall cause an estimate of the cost of such improvement to be made, and report the same to the common council, and, if approved by the council, the board may cause the work to be done, etc. Section 4 provides that before ordering any such work to be done, such board shall view the premises and consider the amount proposed to be made chargeable against the several lots, and the benefit which in their opinion will actually accrue to the owners of the same in consequence of such improvement; and in effect makes the lot chargeable with such part of the cost of the improvement as they shall consider it benefited thereby. Section 5 provides that the board shall give notice to the owners, in the official paper, that an assessment of benefits for such improvement is ready for inspection in their office, and require him to do the work within a certain time; gives the owner, if not satisfied with the assessment of benefits, the right to appeal to the common council, and if upon such appeal he is dissatisfied with the decision of the common council, to appeal from their decision to the circuit court.

Section 4, ch. 129, Laws of 1873, amendatory of section 5, ch. 401, P. & L. Laws of 1870, reads as follows: "Section 4. All persons owning or having any interest in any property affected by such assessment, shall, within ten days after the first publication of notice by the city clerk of the said city that such assessment has been reported to the common council, have a right to appeal therefrom to the said common council, and have the same right of appeal now provided by law from the said common council to the circuit court of Milwaukee county. But no such appeal to the said common coun-

cil shall be taken after the expiration of ten days, as provided in this section. And in all cases of assessment hereafter to be made, such right of appeal to the said common council, and from the said common council to the said circuit court, shall be the only remedy for damages sustained by the proceedings or acts of the said city or its officers in the matter to which such assessment relates; and no action at law shall be maintained for injuries sustained by the proceeding or action of the said city or its officers in the matter to which any such assessment hereafter made relates, whether such action be founded on section 18 of chapter 10 of the act mentioned in the title mentioned in this act, and hereby amended, or otherwise."

Section 5 of said chapter 129 provides that in case the common council shall thereafter order the grade of any street to be changed, which has in fact been changed since the twentieth of February, 1852 — being the date of the passage of the amended charter which contains section 18, subch. 10, above referred to, — an assessment of benefits and damages shall be made as in the other cases of grading streets, and all the provisions of law relating to assessments for grading streets shall apply to assessments for grading such street, and the benefits and damages of such grading, "and the damages, costs and charges mentioned in section 18 of chapter 10 of the act hereby amended, shall be included in such assessment."

Section 13, chapter 401, Laws of 1869, provides as follows: "Any person entering into any contract with the city, and who agrees to be paid from special assessments, shall have no claim upon the city in any event except from the collection of the special assessments made for the work contracted for; and no work proper to be paid for by special assessment shall be let, except to a contractor who shall so agree."

It will be seen that the complaint alleges that the raising of the grade of said street was claimed to be done by the common council of said city in pursuance of the laws regulating the

manner of doing the same, and that the cost of filling the same in front of the plaintiff's lot was assessed against said lot on account of the benefits which would accrue to it by reason of the raising of the grade in front thereof, and that because the same was so pretended to be assessed as benefits, and because the common council had ordered the work to be done by the plaintiff, and unless done by him the city would let the work by contract, and charge the cost of doing the same to the lot, he (plaintiff) did the work.

Under the charter of 1852, above cited, this court held that an ordinary action at law might be brought by the owner of any lot in said city to recover the damages, costs and charges arising from the change of grade of the street in front thereof, after the grade had been once established. *Goodrich v. The City of Milwaukee*, 24 Wis., 422. In the case of *Church v. The City of Milwaukee*, 31 Wis., 512, the decision in the case of *Goodrich v. The City of Milwaukee, supra*, was affirmed, and it was further held that the provisions of the charter, as amended by chapter 401, P. & L. Laws of 1869, amended by chapter 401, P. & L. Laws of 1870, giving appeals from the assessments of damages and benefits, did not apply to cases where a street grade was changed. Justice COLE, in commenting upon this point, says: "The learned counsel for the city suggests that the rule in *Goodrich v. Milwaukee* proceeded upon a misconception of the policy of the charter, and ought to be changed. But we still think the decision then made was correct, for the reason stated in the opinion.

"It seems to us that the city charter, and the various acts relating thereto, provide no methods for assessment of damages arising from the alteration of the grade of a street, and that the provisions in regard to the assessment of benefits, which is made by the board of public works, have reference to an entirely different class of cases; and, if this view be correct, it follows that the plaintiff's remedy by action has not been taken away or abrogated by the provisions in the

acts of 1869 and 1870, above referred to." This case, and the case of *Stowell v. The City of Milwaukee*, 31 Wis., 523, settled a question as to the rule of damages in such case. They hold that the city in such action may, if it can, show in mitigation of damages, or for the purposes of defeating the plaintiff's right of recovery, that the change of grade, and the costs and expenses of such change, were compensated to the plaintiff by the appreciation in the market value of the property of the plaintiff in front of which such change was made.

Justice COLE, who also delivered the opinion in this case, says: "The counsel for the plaintiff objects to that portion of the charge which allows the general benefits conferred upon the plaintiff's premises, in common with the other property affected by the grade, to be offset against the direct damages. But, as we have said in the Church case, this was correct. The plaintiff cannot complain if he is indemnified against all loss resulting from the change of grade, and if his property is appreciated in its market value by the alteration, to that extent he is not damnified but benefited."

In the Church case, the court below had in effect charged the jury that the same rule as to damages must be applied as in the case of property taken by a railroad company; but the court say: "We think a different rule applies under the charter; for a street is usually graded in the city for the convenience of the public, and such grading not infrequently confers direct benefits upon all the lots on the street. If any one's premises are injured by the grade, he has no reason to complain, providing his actual loss is made good; and if the amount which the premises are actually diminished in value by reason of the grade is added to the cost and expense of putting them in the same relative position to the street after the change that they were before, the owner is fully indemnified within the intent of the charter. All damages, costs and charges arising from an alteration of the grade are paid him

when this is done; and it is manifest, in determining the amount which the plaintiff's lot and improvements were lessened in value, it was proper for the jury to consider the nature and condition of the property before and after the grade, and any advantages and benefits which might be conferred upon it in common with other property on the street affected by the grade."

These cases settled two questions: *first*, that the appeal provided for in the charter of the city, as amended in 1869 and 1870, did not apply to the case of regrading a street upon a change of grade; and *second*, that, although the officers of the city could not bind the owner of a lot by an assessment of benefits, in case of regrading a street to a changed grade, either in whole or in part to offset the costs, expenses and damages caused by such regrade, yet in an action by the owner under the charter to recover such damages, the city could either in part or in whole defeat the plaintiff's action by showing that the plaintiff was benefited by increasing the market value of his lot by such change of grade.

These cases were decided in the June term, 1872, and at the next session of the legislature the city procured the passage of chapter 129, Laws of 1873. This act was clearly intended to remove the objection that in cases of the change of the grade of a street in said city no assessment of benefits and damages could be made, and that therefore in such cases no appeal from an assessment was allowable under the charter; and sections 4 and 5 of said charter were passed to make it clear that thereafter the only remedy which a party could have to recover his damages in such cases, if not satisfied with the assessment of damages and benefits made by the city authorities, was by an appeal as provided in that act. We are fully justified, therefore, in holding that at the time the grade of the street in question was changed, the city authorities had the right, and it was their duty, to make an assessment of the damages and benefits which the owners of the property on the street would sustain

and receive by reason of such change of grade; that when such change of grade, and the filling or cutting necessary to conform to such new grade, were ordered to be done in the manner provided by the charter, no party injured thereby could maintain an original action to recover any damages he might suffer by such change; and that his only remedy was by an appeal as provided in said chapter 129, Laws of 1873, if not satisfied with the assessment made by the board of public works.

The old provision of section 18, subch. 10 of the consolidated charter of 1852, is virtually repealed by the provisions of chapter 129, Laws of 1873, so far as it gave a remedy for the recovery of the damages sustained by the change of grade of a street, and substituted a new and exclusive remedy for the recovery of such damages; and this new remedy the party must now follow, or lose his right. The right itself being conferred solely by the statute, the legislature have full power to prescribe the remedy the party must pursue in order to avail himself of the statutory right.

The complaint of the plaintiff must therefore show a right of action against the city outside of the provisions of the charter, in order to recover. If he seeks to recover because the charter of the city says that in case of a change of grade he may recover the damages, costs and expenses he has sustained, the same charter says that he must recover the same by way of an appeal from the assessment made by the proper city authorities. He cannot rely on the statutory right to damages, and at the same time seek to recover such damages in a form of proceeding which the statute prohibits to him in such case.

Does the complaint state a cause of action without the aid of the charter? It is admitted, on the part of the counsel for the city, that the complaint shows on its face that the proceedings to change the grade and regrade the street were irregular and void. This being admitted, according to the opinion of

this court, a party not consenting thereto may recover against the city for any injury done to his property by such change of grade and the filling the street up to such new grade. *Crossett v. The City of Janesville*, 28 Wis., 420. But it is claimed by the counsel for the city, that as the complaint shows that the plaintiff himself did the work voluntarily, for which he now claims compensation, and as the result of which he claims he was injured, he has brought himself within the maxim, "*volenti non fit injuria*," and therefore his complaint fails to state a cause of action. The learned counsel for the plaintiff insists that his client ought not to be considered as having voluntarily done the work which caused the damage, because he did the work of grading the street in the belief that the city officers were proceeding to do the same in a lawful manner, and that the city ought not to be heard to allege that they were not proceeding lawfully.

It might be a sufficient answer to this claim, that the plaintiff himself alleges that they were proceeding unlawfully; but another, and, as we think, more fatal objection to the right of the plaintiff to recover upon this theory is, that, if we are to presume that the city authorities were proceeding lawfully, and that the plaintiff did the work in that belief, then, not having taken any appeal from the assessment of damages and benefits, he must be presumed to have been entirely satisfied with the assessment made by the city authorities, and to have done the work in view of the fact that he was to get no other compensation than the benefits which would accrue to him by the change of grade, the city authorities having decided that such benefits were a compensation for doing such work.

Suppose he had not done the work himself, and the city had let the work by contract to a third person: then, this being a case where the contractor under the city charter, section 13, ch. 401, Laws of 1869, above cited, would have been compelled to take the contract with an agreement to be paid from the special assessments, the city would not have been obligated to pay

the contractor for the work done, had the owner of the lots enjoined the collection of the special assessment on the ground that the proceedings were void. In cases of this kind this court has held that the contractor takes the risk of the regularity of the proceedings; he is charged with knowledge of the irregularities, if there be any; and if his assessment fails for any reason, he is without remedy against the city. *Hall v. The City of Chippewa Falls, ante*, p. 267; *Eilert v. Oshkosh*, 14 Wis., 586; *Fletcher v. City of Oshkosh*, 18 Wis., 232; *Finney v. Same*, id., 209; *Smith v. Milwaukee*, id., 63.

As between the city and the owner of the lot doing the work, it seems to us there would be less equity in allowing the owner to recover for the cost of the work than in allowing the contractor to do so. We think it clear that if the plaintiff did the work, supposing the city authorities had proceeded regularly, and were legally authorized to require the work to be done in this particular case, then he cannot recover. He comes within the maxim above cited. He voluntarily did the work, knowing that he was to have no compensation therefor, or for any damages which might result therefrom; as the city authorities had decided (and under the supposition above mentioned the plaintiff is presumed to have known it) that he was to have no such compensation either for his work or the damages resulting therefrom, because the benefits which would accrue to the plaintiff's property by regrading the street would fully compensate him for the cost of the work and the resulting damages.

On the other hand, if the plaintiff did the work knowing that the city officers were proceeding without any authority, and that all their acts were therefore illegal and void, it is equally clear that he cannot recover of the city the costs and expenses of doing the same, or the damages resulting therefrom. In such case he would be aiding the officers in the performance of acts which all knew were illegal and void, and the plaintiff would be in no position to claim that he supposed the

officers " were in good faith, and with an honest view, endeavoring to obtain for the public a lawful benefit or advantage," within the rule laid down in the case of *Hamilton v. City of Fond du Lac*, 40 Wis., 47; *Squiers v. The Village of Neenah*, 24 Wis., 588–593; *Hurley v. Town of Texas*, 20 Wis., 634, and others of a similar character. The knowledge of the plaintiff that the acts ordered to be done by the city officers were illegal and void, would conclusively bar him from claiming that the city should respond to him in damages for the voluntary performance of the acts so illegally ordered to be done. A person claiming to recover of a municipality for alleged damages arising from the performance of illegal acts by its officers, will not be allowed to do so when it appears that he, knowing of the illegality of such acts, aided and assisted the officers in their performance.

The officers of a municipality are its agents, with limited authority. They can only charge the corporation when acting within their powers, except in those cases where there is a general power to do an act conferred, and the particular manner of doing the same is prescribed by statute. In such cases the municipality may be held responsible for the doing of the act by its officers charged with the duty of its performance, although such officers fail to follow the methods prescribed by law for doing the same. But this exception to the general rule cannot avail a party who, having full knowledge of the illegality of the proceedings of the officers, assists them in the performance of their unauthorized acts. In such case, the party, having knowledge that the agent was not pursuing his authority, can no more recover against the municipality, which is in fact the principal of the officers, than he can of a private person for doing an act upon the order of the agent of such person, knowing at the time that such agent had no authority to do the act on behalf of his principal.

We have shown that if the plaintiff did the work supposing the city authorities were proceeding regularly, or if he did it

knowing they were proceeding irregularly, he cannot recover. It may still be a question whether he can recover if he did the work by order of the city officers, without any knowledge that they were proceeding irregularly, and without taking any measures on his part to ascertain whether their proceedings were regular or otherwise. In such case we think it is equally clear that he ought not to be permitted to recover against the city. He must be held to know that the character of the work directed to be done was such that it would necessarily be paid for in whole or part by special assessments against the property fronting the street upon which the work was ordered to be done, and that under the charter any damages which the plaintiff would be entitled to recover of the city, resulting from the doing of such work, would also be estimated and awarded by the proper city officers. If, therefore, he negligently and carelessly assumed that the officers who ordered the work done had legal authority to do so, he must be held to have done the work relying entirely upon the action of the city officers for his compensation, and for his damages. By doing the work upon their order, without any investigation as to their authority, he in effect agreed to take such compensation for his expenditures and damages as such officers might award to him.

The complaint shows that they did charge his lot with the expense of filling the street in front thereof, and determined that his lot was not damaged by such filling, but was benefited to the extent of the cost of the same; and, he having done the work upon such an assessment, and having taken no means authorized by the charter to enlarge his claim for damages, he must be presumed to have been satisfied with what was awarded to him by the city officers, whether awarded legally or otherwise. Having voluntarily done the work with a view solely to the compensation so fixed by the officers, he cannot be allowed to urge successfully that because the proceedings are void he may claim a larger compensation from the city. He has received the compensation which was offered him by the city

officers for doing the work and for his damages. The city makes no complaint, but has acquiesced in the illegal acts of its officers. Under these circumstances there is certainly no equity in allowing the plaintiff to avoid the conditions of the contract under which he did the work, on the ground that the other party had no authority to make it, when such other party has performed the same on its part without objection.

In every aspect of the case, so far as the grading and filling of the street is concerned, we think the plaintiff must be deemed to have done the work voluntarily, and comes clearly within the maxim above quoted.

The case made by plaintiff in his complaint does not bring him within the rule laid down in *Dore v. The City of Milwaukee*, 42 Wis., 108. In that case the work was done by the plaintiff in pursuance of a *valid* order of the city officers, and, as the law then stood, the city was declared to be liable to the plaintiff for all damages sustained by the plaintiff by reason of the doing of such work, and the party injured was authorized to bring an original action in any court having competent jurisdiction to recover the same. When, however, the work was done in the case at bar, no action could be brought by the party injured by the doing of the work in a lawful manner; the statute of 1873 having taken away the remedy by action, and declaring that the only remedy of the party injured must be based upon the award of damages made by the proper officers, and, if not satisfied with that, by an appeal from such award in the manner provided by law.

The allegations in the complaint as to the paving of the street in front of plaintiff's lot, in 1875, do not show that there was any illegality in the proceedings of the officers in letting the contract to Martin for doing that work, and consequently do not show that the assessment made upon the plaintiff's lot for that purpose was illegal and void.

Chapter 322, Laws of 1875, authorized the board of public works of the city of Milwaukee to cause this street, with others

Owens vs. The City of Milwaukee.

in said city, to be paved with wooden block pavement, without any petition of the owners therefor, or any resolution of the common council of the city authorizing the same, and required that one-third of the cost of doing the work should be assessed against the lots fronting the streets, and two-thirds should be paid out of the ward fund; and provided for letting the work to the lowest bidder within sixty days after the passage of the act, to be finished by the 15th of November, 1875. There are no allegations in the complaint which show that the contract was not fairly let as provided in said act. It is alleged that some of the lots were assessed more than others, and that such assessments were made arbitrarily; but there is no allegation that more than one-third of the cost of the work was charged to the lots, nor more than two-thirds to the ward fund; nor is there any allegation that the lot of the plaintiff was assessed for more than its just proportion of the cost of doing such work.

The complaint does not show, therefore, that the plaintiff was injured by the unequal assessment, if any such was made. By the terms of the law, one-third was to be charged to the lot and two-thirds to the ward fund; so that it was entirely immaterial to the plaintiff how the other lots were assessed, so long as his lot was not assessed more than its just proportion, and so long as the ward fund was not charged with more than two-thirds of the cost of the work. If he has paid an assessment under these circumstances, he makes no case, either in law or equity, to recover the same back from the city. But I fail to find any allegation in the complaint that the plaintiff's lot was assessed for any part of the work, or that the plaintiff has paid any such assessment either to the city or to the contractor. How the plaintiff was injured by reason of the paving of the street in front of his lot at the expense of the ward and the other lots fronting on such street, it is difficult to imagine.

After carefully examining the allegations of the complaint

in regard to the paving contract made with Martin, they seem to be entirely immaterial, and do not in any way help make out a cause of action for the recovery of damages for raising the grade of the street. These allegations do not show that the plaintiff was put to any cost or expense, or that he has paid any tax or assessment on his lot for such pavement; nor is there any claim that he sustained any damage by reason of the paving of such street, except, perhaps, so far as the paving was a part of the filling up of the street to the changed grade. The question of the constitutionality of the law authorizing such pavement is therefore of very little importance in determining this case.

*By the Court.* — The order of the county court is affirmed.

RYAN, C. J., took no part.