Church vs. The City of Milwaukee.

## CHURCH VS. THE CITY OF MILWAUKEE.

CITIES. (1) *Damages resulting to lot from change in grade of street; Remedy of lot owner.*— (2–4, 6, 7.) *Evidence and presumptions in such cases.*— (5) *Measure of damages; what benefits offset.*
CHANGE OF VENUE. (8) *When order may be made; and* (9) *when reviewable.*

1. The appeal to the common council from an award of the board of public works of the city of Milwaukee, provided for by ch. 401, P. & L. Laws of 1869, as amended by ch. 401, P. & L. Laws of 1870, relates to an assessment for the grading of a street for the first time, and not to a claim of damages for a *change of grade* subsequently made by the city; and in the latter case the party damnified has his remedy in an action at law. *Goodrich v. Milwaukee* (24 Wis., 422), as to this point, adhered to.

2. In an action for damages resulting to a lot owner from a change in the grade of a street, proof of the passage of successive ordinances, first establishing the grade and then changing it, with plaintiff's testimony that he graded the street in each case to conform to such ordinances, and that the grading was done, in each case, under the superintendence of the city engineer, *held* sufficient, without showing by the record any order of the common council to execute the grade, or any published order of the street commissioners or board of public works, directing the owner to do the work.

Church vs. The City of Milwaukee.

3. Nor was it necessary for the plaintiff to produce and prove the petition of the owners of property affected, required by the act of 1870.

4. The plaintiff had a right to assume that all necessary steps had been taken by the city authorities to render their acts lawful; and the city cannot be heard to allege the contrary, as against him.

5. The charter provides that "all damages, costs and charges arising' from a change in the grade of a street "shall be paid by the city to the owner of any lot * * injured in consequence of" such alteration. *Held*, that while any *peculiar* or *special* benefit conferred upon plaintiff's lot, not common to other lots in the neighborhood, and not increasing its market value, could not be considered by the jury in fixing the damages, yet if such lot, in consequence of the changed grade, was appreciated in value in common with the other property in that locality, the city was entitled to have such increase of value deducted in the estimation of damages.

6. A *photograph* of plaintiff's premises, which he testified was as perfect as it could be, was admitted in evidence to show the location and surroundings of said premises and improvements, and aid the jury in determining how they were affected by the change made in the grade of the street. *Held*, that it was properly admitted, a *view* of the premises by the jury being impracticable.

7. Witnesses for the defendant city were asked whether plaintiff's property was injured or benefited by such grading. *Held*, that the question in that form was inadmissible.

8. An order granting a change of venue, upon affidavits tending to show that a fair and impartial trial could not be had in the county where the action was brought, in consequence of a very strong and prevalent feeling of the inhabitants of such county against all claims of the kind sued upon, *held*, not an abuse of discretion.

9. On appeal from a judgment, an objection to an order granting a change of venue cannot be considered, unless an exception was duly taken.

APPEAL from the Circuit Court for *Racine* County.

This action, for damages alleged to have accrued to plaintiff from a change made by the defendant city in the grade of a street after such grade had once been established, was commenced in the circuit court for Milwaukee county; but, on plaintiff's motion, based upon affidavit, the place of trial was changed to Racine county. The plaintiff had a verdict for $1,968 damages; and, a new trial having been denied, the defendant appealed from a judgment on the verdict.

The questions presented by the record will sufficiently appear from the opinion.

*E. G. Ryan*, City Attorney, for appellant

*Jenkins & Elliott*, for respondent.

COLE, J.    The first question discussed by the counsel for the city is the one in regard to the change of venue.  He insists that the county court erred in changing the place of trial to Racine county.  The ground assigned in the application for a change was, that a fair and impartial trial of the action could not be had in Milwaukee county.  The *application was founded upon* three affidavits — one made by the plaintiff, one by Geo. G. Houghton, and one by Jas. G. Jenkins — all of whom certainly swear to the existence of a state of facts which tends to show that a fair and impartial trial of the action could not be had in Milwaukee county in consequence of the very strong and prevalent feeling among the citizens of the city of Milwaukee against all claims for damages on the part of lot owners resulting from a change in the grade of the streets.    These affidavits were not opposed by anything offered on the part of the defendant, and they seem to us to make out a proper case for a change of venue.    At all events, it seems to us impossible to say that there was any abuse of discretion on the part of the county court in granting the application upon the case made.    And we may still further remark that we do not find in the record any exception taken to the order changing the venue, which is, perhaps, of itself a sufficient answer to this objection.

The action is brought against the city under section 18, chap. 10 of the charter of 1852, to recover for damages done to the plaintiff's property by a change of the grade of the street in front of and adjoining his lot upon which his residence is situated.    That section of the charter provides, that where the grade of the street has once been established and is afterwards changed, "all damages, costs and charges arising therefrom shall be paid by the city to the owner of any lot, or parcel of land, or tene-

ment, which may be affected or injured in consequence of the alteration of such grade."

The plaintiff claims that the grade of the street in front of his lot was established in the year 1853, and that he was required by the proper authorities to grade, and did in fact cut and excavate the street in front of his premises to the depth of twenty feet below the surface of his lot, and conformed the surface of the lot to this changed grade by terracing the same down so as to make the lot and house accessible from the street, and erected a stone wall around the lot to prevent it from caving ; and that this grade was afterwards changed in the year 1869, by an ordinance of the city, which last grade was something over ten feet lower in front of his premises than the previous grade of 1853 ; and that he has been compelled to further excavate the street in front of his premises to make it conform to such altered grade. As a consequence, the premises have been greatly injured, and access to them from the street has been rendered difficult and inconvenient; and he has brought this action to recover the damages allowed by the provisions of the charter above quoted.

It is now claimed by the counsel for the city, that the action cannot be maintained, and that the remedy of the plaintiff was by an appeal from the assessment of the board of public works, under section 25, ch. 401, P. & L. Laws of 1869, as amended by section 5, ch. 401, P. & L. Laws of 1870; and that this appeal is his only remedy. And he further insists that there are very cogent reasons, growing out of the economy and policy of the city charter, for holding that this appeal from the assessment of the board was intended to be the exclusive remedy for the party aggrieved in a case like the one before us. Because, he says, by the various provisions of law regulating the subject, before the common council orders any street improvement to be made, the board of public works is required to estimate the cost of the work, and to recommend the same; a special assessment of damages and benefits to lots by the pro-

posed improvement is made, and if the benefits and damages of the whole work do not balance each other, the excess is chargeable to the ward fund, which is limited in fact as well as in law. And as it was absolutely essential that the common council should be certainly advised of the public cost of each work before ordering it, the appeal was given directly to that body from the decision of the board. And now to hold that each party affected by the assessment may waive his right of appeal to the common council; submit apparently to the assessment; and, after the work is done and paid for, bring his action at law for damages — deranges the whole policy and economy of the charter, and throws upon the general fund of the city an expense designed to be paid out of the ward fund. There is undeniably great force in this view of the various provisions of the charter, but to our minds it is not satisfactory. These provisions do indeed give the lot owner who feels aggrieved by a decision of the board, in a class of cases, the right to appeal to the common council from the assessment of benefits adjudged to accrue to him by reason of a street improvement in front of his lot. And, if dissatisfied with the action of the common council in the matter, the lot owner has a further appeal to the circuit court. But these provisions in terms apply to an assessment for damages and benefits in the ordinary case of grading or otherwise improving the street, and not to a claim for damages resulting from a change of grade. They have reference to a grade of the street for the first time, and to an assessment made against the lots for such an improvement. As a general rule, this burden is thrown upon the lots abutting upon the street; and, if there are local and peculiar benefits to a lot in excess of damages resulting from the work, the lot owner is required to pay for them. It is only another way of taxing an individual peculiarly benefited by the street improvement (*Holton v. The City of Milwaukee, ante*, p. 27) and the provisions are designed only to apply to a particular class of cases. The case before us, arising under sec. 18, ch. 10 of the

charter, is for damages resulting from an *alteration* of a grade *once established* by the city. And the section provides, in that case, that all "*damages, costs and charges arising therefrom* shall be paid by the city to the owner of any lot or parcel of land, or tenement, which may be affected or injured in consequence of the alteration of the grade." These damages, costs and charges arising from an alteration of the grade are not to be reduced by the local and peculiar benefits which the owner receives, as in the case of the grading of a street in the first instance. This seems to be the proper construction of the various enactments bearing upon the question. Now, if it had been the intention of the legislature to modify this section of the charter, and to give the board of public works jurisdiction to award damages and assess benefits in cases arising from an alteration of a grade once established, and then to give an appeal to the common council, nothing was easier than to have done so. In that case it might have been said, with much force of reason, that this remedy by appeal which the aggrieved party had, was his only remedy. But such is not the fair interpretation of these various provisions. The assessment of benefits which the board makes, and from which the lot owner has his appeal to the common council, is of a different kind; that is for the grading and improvement in the first instance; and it was so decided by this court in the case of *Goodrich v. The City of Milwaukee*, 24 Wis., 422, where this precise question arose. It was there held that this remedy by appeal in a particular class of cases did not take away nor destroy the right of action for damages theretofore existing, arising from an alteration of the grade. The learned counsel for the city suggests that the rule in the Goodrich case proceeded upon a misconception of the policy of the charter, and ought to be changed. But we still think the decision there made was correct, for the reasons stated in the opinion. It seems to us that the city charter, and the various acts relating thereto, provide no methods for the assessment of damages arising from

the alteration of the grade of a street, and that the provisions in regard to the assessment of benefits which is made by the board of public works have reference to an entirely different class of cases. And if this view be correct, it follows that the plaintiff's remedy by action has not been taken away or abrogated by the provisions in the acts of 1869 and 1870 above referred to.

Upon the trial, the plaintiff offered in evidence an ordinance of the common council passed July 14, 1853, establishing the grade of several streets, and among them Fourth Street, which is the street in front of his lot. He also was permitted to prove by his own testimony, that he graded the street adjoining his premises so as to make it conform to the ordinance, and that the grading was done under the direction of the city engineer, who superintended the work. The plaintiff also offered in evidence an ordinance passed by the common council on the 13th of September, 1869, changing the grade of Fourth Street in front of his lot, and proved that he also did this grading under the superintendence of the city engineer. All this testimony was objected to on the trial, and it was then claimed, and it is now insisted, that it was insufficient to prove that the grading was done and executed in obedience to proper orders of the city authorities requiring it to be done. And the question arises, Was it further incumbent on the plaintiff to show by the record an order of the common council to execute the grade, and also a published order of the street commissioners, or of the board of public works, for the owner to do the work mentioned in such notice? It seems to us that no such record evidence was necessary under the circumstances. The common council had authority in the first instance to permanently establish the grade of the street, and also to change the grade after it had once been established. The ordinances introduced in evidence show that the grade was both established and changed. And it was shown by parol evidence that the grading was done in both cases by the plaintiff in obedience to these ordinances, under

the superintendence of the city engineer. The city ought not now to be permitted to say there were no orders made for the actual doing of the work, as required by the charter. Certainly not as against the plaintiff, who had the right to assume that all necessary steps had been taken by the city authorities to render their acts lawful. *Squires v. The Village of Neenah*, 24 Wis., 588. And it seems to us the same answer must be given to the objection that the petition — representing the owners of property affected by the improvement — required by section 3 of the act of 1870, was not produced and proven on the trial.

The plaintiff had a photograph taken of the premises, which was received in evidence against the objection of the counsel for the defendant. The city engineer was present when the photograph was taken, and the plaintiff testified that the picture was as perfect as it could be. No effort was made to impeach the general correctness of the photograph, and we are really unable to perceive any valid objection to its admission in evidence. It might aid the jury in arriving at a clear and accurate idea of the situation of the premises, and enable them the better to understand how they were affected by the change in the grade. Of course, the main thing was to bring before the minds of the jury the location of the plaintiff's lot and improvements and all the surroundings; and this had to be done by the description of witnesses acquainted with the place, or by pictures or diagrams. If the photograph was a perfect representation of the premises, why should it not be admitted in evidence to aid the jury in determining how they were affected by the alteration of the grade? It is said that the premises themselves were the highest evidence, and if the jury could have had a view of them, it would have greatly assisted them in passing upon the questions before them. So, undoubtedly, it would. But as a view was impracticable, the jury had to obtain the best idea they could of the location of the premises with reference to the changed grade. They were compelled to . .

rely upon the description of witnesses, pictures and diagrams, and such means of information as they had before them. And it appears to us that it was no violation of the rules of evidence to allow the photograph of the premises to go to the jury with the other testimony. The case of *Ruloff v. The People*, 45 N. Y., 213, seems to sanction the admission of such evidence, and we do not really perceive any substantial objection against it. The defendant was permitted to give in evidence a diagram or profile of the premises for the purpose of showing the general surroundings of the property; and the photograph was competent for the same purpose.

The witnesses Milman and Sholes — who were members of the board of public works in 1870, and made the assessment for the grading of Fourth Street — were each asked this question on the trial, by the counsel for the defendant: " Was the property of *Mr. Church* injured or benefited by the grading of 1870 ?" The question was objected to by the plaintiff's counsel, and excluded. Although an exception was taken to this ruling at the time, it is not seriously relied on here for a reversal of the judgment. There can be no doubt that the question was objectionable in the form in which it was put (*Farrand v. The Chicago & Northwestern R. R. Co.*, 21 Wis., 436), and therefore was properly excluded.

This brings us to the consideration of the only remaining question in the case, namely, as to what is the proper rule of damages in cases like the one before us. Upon this point the circuit court instructed the jury, that if they found from the evidence that the plaintiff was entitled to recover, then they should allow him a gross sum in damages equal to the amount which his lot and improvements were lessened in value by reason of the alteration in the grade, and interest on such decreased value from November 2d, 1870, and that in determining the amount of such decreased value, they should take into consideration the nature and condition of the property immediately before and after the grade, and exclude any supposed benefits

to property on that street arising from the change of the grade. An exception was taken to this portion of the charge, by the counsel for the city, as laying down an incorrect rule for the assessment of damages. This remedy being given by section 18, ch. 10 of the charter, it is obvious that the amount and extent of the recovery turns wholly upon the construction to be placed upon that section. The words of the section have already been quoted in this opinion, and need not, therefore, be again repeated. But the objects and intent of the provision are plain and unambiguous. And they are to simply indemnify a party whose property was affected or injured by the alteration of a grade of a street which had once been established by the city, for all damages, costs and charges arising from such change. The legislature were well aware that owners of property in the city would arrange the surface of their lots and make their improvements with reference to the grade of the adjoining streets. And where the power to establish the grade of streets was a continuing power in the common council — as it was under the charter — it was frequently exercised to the great loss and injury of lot owners who had thus improved their property and adjusted all the surroundings to the established grade. The object was to protect these parties, and to secure to them full compensation for whatever damages they might sustain by a change of the grade. If a change in the premises became necessary — as a cutting down of the surface of the lot, or filling it up — a raising or lowering of the buildings and walks — whatever expense was incurred in adjusting the premises to the same relative position to the street after the change of grade as before, was to be allowed. But where premises were appreciated in marketable value in common with all other property in the locality affected by the grade, the city should have the advantage of this increased value. It was proper that these general benefits which the plaintiff's property had in common with the other property on the street should be deducted or set off against the damages. But if there was any

peculiar or special benefit conferred upon his lot, not common to other property in the neighborhood — as, for instance, securing suitable drainage, or something of that kind, which did not really increase the marketable value of the property — the plaintiff was to have the advantage of it. For he was entitled to the enjoyment of his property in the condition in which it stood before the alteration of the grade, and if he was compelled to lower his lot by reason of this alteration, the charter secured to him the cost and expense of the work. It will be seen that the circuit court directed the jury, in effect, that in estimating the plaintiff's damages they were to exclude the general benefits to property on the street from their consideration. That is, though they might be satisfied from the evidence that in consequence of the change of grade all the lots on the street had been increased in value, and the plaintiff's in common with all others, yet the city was not to have the advantage of this increase in the value of his property. The court doubtless supposed the same rule should be applied as where property is taken by a railroad corporation, where general benefits common to other property in the neighborhood are not allowed as a set-off against special damages. But we think a different rule applies under the charter. For a street is usually graded in the city for the convenience of the public, and such grading not infrequently confers direct benefits upon all the lots on the street. If any one's premises are injured by the grade, he has no reason to complain, providing his actual loss is made good. And if the amount which the premises are actually diminished in value, by reason of the grade, is added to the cost and expense of putting them in the same relative position to the street after the change that they were before, the owner is fully indemnified within the intent of the charter. All damages, costs and charges arising from an alteration of the grade are paid him when this is done. And it is manifest, in determining the amount which the plaintiff's lot and improvements were lessened in value, it was proper for the jury to consider the nature

and condition of the property before and after the grade, and any advantages and benefits which might be conferred upon it in common with other property on the street affected by the grade. For this error in the charge we think there must be a new trial.

*By the Court.*— The judgment of the circuit court is therefore reversed, and a new trial ordered.