## CHURCH vs. THE CITY OF MILWAUKEE.

CITIES: DAMAGES: EVIDENCE. (1) *Liability of city for changing grade of street.* (2) *Rule of damages.* (3) *Evidence in action for such damages.* (4) *Alleys must conform to grade of street.* (5) *Excessive damages.*

1. Under the charter of Milwaukee, in case of any change in the established grade of a street, the owner of a lot affected thereby may recover the expense of restoring his premises to their former position relative to the street.
2. In an action for such damages, the city is entitled to the advantage of any *increase*, and the lot owner to additional damages for any *diminution*, in the *market value* of the premises, caused by the change of grade.
3. In such an action, where the streets adjacent to plaintiff's premises had been *graded down* several feet below the grade previously established, it was not error to receive the following evidence:

    (1) Testimony as to the exact construction and situation of plaintiff's house on the premises.

    (2) Testimony as to the value of fruit and shade trees on the lot, it appearing that such lot would have to be graded down several feet in

order to conform to the altered grade of the street, and that this would destroy the trees and shrubbery thereon.

(3) Estimates of the city engineer, made and filed, according to law, with the board of public works prior to ordering the work, and showing the amount of excavation in front of the premises, and the expense of the work which the altered grade would render necessary; plaintiff being chargeable with such excavation and expense.

(4) Testimony as to the expense of lowering the dwelling house, out-houses, cistern, etc., given by practical house builders who had examined the property and estimated the cost of these changes.

4. The ordinances of said city, relative to the grading of streets, either expressly require or plainly imply and must be held reasonably to mean, that the *alleys* shall conform to the grade of the adjoining streets; and plaintiff was therefore entitled to recover the expense of grading down that part of the lot fronting on the alley, and lowering his barn situate thereon.

5. Witnesses, whom the jury were at liberty to believe, having estimated the various items of plaintiff's damages at sums whose aggregate is greater than the amount found by the jury, the verdict cannot be set aside by this court for excessive damages.

APPEAL from the Circuit Court for *Racine* County.

The charter of the city of Milwaukee of 1852, ch. 10, sec. 18, provides that where the grade of a street has once been established and is afterwards changed, "all damages, costs and charges arising therefrom shall be paid by the city to the owner of any lot or parcel of land, or tenement, which may be affected or injured in consequence of the alteration of such grade." Under this section *Church* brought an action against the *City of Milwaukee*, in the county court of Milwaukee county, to recover damages sustained by him on account of a change of grade in the street in front of his premises, made by the city after the grade had been established. A change of venue was had to Racine county, where the cause was tried, and plaintiff had a verdict for $1,968 damages, and, a new trial having been denied, defendant appealed from the judgment to this court, where the judgment was reversed and a new trial ordered. See *Church v. The City of Milwaukee*, 31 Wis., 512. The cause was again tried in the court below, and resulted in a verdict

for the plaintiff for $2,552.39. From this amount plaintiff remitted $317.16, leaving the verdict $2,235.23, for which amount, with costs, judgment was entered, a motion for a new trial having been overruled; and defendant again appealed.

The exceptions taken by the defendant to the rulings of the court in regard to the admission of evidence, and to its refusal of an instruction asked by defendant, will sufficiently appear from the opinion.

*Emil Wallber*, for appellant, contended, *inter alia*, that the judgment could only be sustained upon the theory that the city was obliged to respond in exemplary or punitory damages. In this class of actions the damages do not depend on the judgment and discretion of the jury, as in actions for personal injuries, but must rest exclusively and unreservedly upon the testimony of the witnesses. In suits for injuries to the person, this court has frequently reversed judgments for excessive damages, and much more reason seems to exist for a reversal in this case. See *Potter v. C. & N. W. R'y Co.*, 22 Wis., 615; *Goodno v. Oshkosh*, 28 id., 300; *Spicer v. C. & N. W. R'y Co.*, 29 id., 580.

*Jenkins & Elliott*, contra, argued that it was the province of the jury to determine which of the estimates as to the cost of the work was correct, and their verdict based thereon should not be disturbed. Interference by the court with the verdict of a jury is only allowable when it is clearly manifest upon the face of the record that the verdict is wholly unwarranted by the evidence, or was manifestly induced by passion, prejudice, partiality, or mistake on the part of the jury. Otherwise, the amount of damages is a matter solely for the determination of the jury, and courts will neither assume their province nor seek to override their determination. *Weisenberg v. Appleton*, 26 Wis., 56.

COLE J. The question as to the extent of the liability of the city under its charter for a change in the grade of a street

which had once been established, was fully considered and determined when this case was here on the former appeal. 31 Wis., 512. See also *Stowell v. Milwaukee*, id., 523. It was there held that the plaintiff was entitled to recover whatever sum it would cost him to put his premises in the same relative position to the street after the grade that they were before; but that if the premises were benefited or damaged by the change of grade, in the one case the city was to have the advantage of the increased value, while in the other the plaintiff was to be compensated for the lessened market value, in addition to the cost of lowering the premises to accommodate them to the condition of the altered grade. It seemed to us that the liability of the city to that extent was clearly imposed by the plain provision of the charter, which declared that all damages, costs and charges arising from the change of grade to any lot owner, should be paid by the city to such owner whose lot or tenement was affected or injured in consequence of the alteration of such grade. This provision was obviously intended to secure an indemnity to a lot owner for all actual loss and damage which he might sustain in consequence of the change of grade, and would seem to be founded on a just principle.

The circuit court, in its charge on the second trial, seems to have directed the jury substantially in accord with this construction of the charter. We therefore think there was no error in the propositions of law which were given for the guidance of the jury on the question of damages.

Some exceptions were taken on the trial to the admission of certain testimony offered by the plaintiff; also to the refusal of the court to give a number of instructions asked by the defendant, and more especially to the ruling on the motion for a new trial, which are relied upon for a reversal of the judgment. These exceptions will be briefly considered.

The plaintiff was sworn as a witness on the trial, and was asked, among other things, to describe his house — just how it was fixed, and how it was made. This question was objected

to, and it is insisted that it was improper under the rule of damages laid down by this court. We do not so understand the matter. It seems to us that it would only be possible to give the jury an accurate and full knowledge of the state of things under investigation — the situation of the premises, the condition of the house, and how the property would be affected by the change in the grade of the adjoining street — by evidence of this character. In no other way could the jury get at the real facts, than by such descriptive testimony and evidence of a like character.

The plaintiff was also asked as to the value of certain fruit and shade trees on the lot, and answered under objection. Upon what principle it could be successfully claimed that such evidence was improper, we fail to perceive. It appeared that the lot from necessity would have to be graded down a number of feet in order to conform to the altered grade of the street, and that this would destroy the trees and shrubbery upon the premises. The value of these trees which would be destroyed was a proper element to be considered in estimating his damages. This, it appears to us, is too obvious to require further remark.

Again, certain estimates of the city engineer, which were made and filed according to law with the board of public works, prior to ordering the work, and which showed the amount of excavation in front of the premises, and the expense of the work which the altered grade would render necessary, were received in evidence, under objection on the part of the defendant. And upon this question we fully agree with the observation made by plaintiff's counsel, that these estimates, thus made by the city engineer, after actual survey and measurement of the street and calculation of the quantity of work required to be done in the street sought to be graded, were not only competent evidence to establish these facts, but it seems to us they were the best and most satisfactory evidence which could be given upon the subject. It was not claimed that they

concluded the city upon any point, but they certainly tended strongly to show the amount and cost of grading to be done.

Certain witnesses were asked to state in detail the expense of lowering the dwelling house, outhouses, cistern, etc., and of adjusting the premises to the same relative condition in respect to the street they were in before the grading. It is said that before the witnesses should have been allowed to answer these questions, it should have appeared that they were acquainted with the location and condition of the premises before the grading. We think it does fully appear that they were familiar with the property; that they had examined it, and estimated the cost of lowering the building down to the grade. Besides, the testimony was objected to generally, and not upon any such ground as is now taken. The witnesses were practical house builders, and competent to speak upon the subject concerning which they were called upon to testify. We think there was no error in admitting their testimony.

The instruction asked on the part of the defendant, that there was no evidence that the grade of the alley had been changed, and therefore the plaintiff was not entitled to have any damages assessed for lowering his barn or grading down his lot fronting on the alley, was properly refused. The ordinance of July 14, 1853, which established the grade of certain streets, provided that all alleys running through the blocks bounded by those streets should conform to the grade of the streets upon which they terminate; and whether the ordinances of September 13th, 1869, and June 6th, 1870, use the same language or not, this surely would be the plain implication and meaning of those ordinances. For, as is well remarked by plaintiff's counsel, it would be a strange policy for the city to have the grade of the streets ten or fifteen feet below the alleys terminating on them, and it is most unreasonable to presume the authorities were guilty of any such absurdity.

The only remaining exception to be considered is that taken to the ruling of the court denying the motion for a new trial.

The principal ground upon which the motion was founded was, that the damages found by the jury are excessive, and not warranted by the evidence. In view of the testimony contained in the bill of exceptions, it is impossible to say that the verdict, even, which was rendered, was unwarranted by the evidence. For, according to the estimates of some of the witnesses, the expense of lowering the house, outbuildings, cistern and well, and of grading down the lot, loss of trees, etc., over and above all that plaintiff received for material sold from the lot, would exceed the amount which the jury assessed. Besides, the plaintiff remitted from the verdict the sum of $317.16, leaving it to stand at $2,235.23. If the jury believed that the actual loss and damage to the plaintiff resulting from the change of grade were as great as the estimates of some of the witnesses, as a matter of course they were at liberty to so find. At all events, there is no ground for saying that the damages are excessive, as there is abundant testimony which tends to prove that they will no more than make good the loss which the plaintiff has sustained by the change of grade.

*By the Court.* — The judgment of the circuit court is affirmed.