## FRENCH vs. THE CITY OF MILWAUKEE.

*May 11 — June 23, 1880.*

CITY OF MILWAUKEE:    *Lot-owner's damages for change in grade of street.*

> Under the charter of Milwaukee, where the established grade of a street has been changed, the damages recoverable by the owner of an adjoining lot include all necessary expenses in changing the grade of the lot to conform it properly to the new grade of the street, and also the expense of repaving the street, charged upon the lot and rendered necessary by such change in the grade of the street; and it makes no difference in this rule, that the lot is unimproved, and that the expense of conforming its natural grade to the grade of the street as finally established, has been no greater than it would have been if such final grade had been adopted in the first instance.

APPEAL from the Circuit Court for *Racine* County.

Action to recover the damages, costs and charges accruing to the plaintiff, as owner of certain lots in the city of Milwaukee, from a change made in 1872, pursuant to a city ordinance passed in 1871, in the grade of a street on which such lots front. The street had been filled and graded in 1856 in pursuance of an ordinance establishing the grade, passed in 1853; and in 1857 the city laid a stone pavement thereon, and a plank sidewalk in front of and adjoining said lots, and at the expense thereof; and all this was done in pursuance of orders duly made by the city authorities. The ordinance of 1871 raised the grade six feet; and in 1872 the plaintiff was required, by like orders, to fill the street in front of said lots to the new grade, to pave the roadway and gutters with the De Golyer wooden pavement, to plank the sidewalk or have it laid with flag-stone or brick, and to reset the curbstones, etc. Plaintiff did in fact, during the year 1872, fill the street, pave the sidewalk and reset the curbstones, as thus required, at an expense to him of $521.20, but neglected to pave the roadway and gutters; and in 1873 the city caused the latter work to be done,

French vs. The City of Milwaukee.

and thereupon according to law made an assessment for said work, upon each of said lots, of $370, which plaintiff was compelled to pay, and did pay, January 22, 1874. The complaint, after stating these facts, alleges that by reason of such change of grade, and the filling of said street thereby required, said lots have been greatly injured, and access to them has been rendered difficult; that, in order to make them accessible and fit for occupation, it will be necessary to fill them at least six feet, which will cost upwards of $1,200; that by reason of said change of grade the premises have been otherwise greatly deteriorated in value; and that, by reason of the premises, plaintiff has sustained damages in the sum of $4,000.

The answer denied the alleged injuries and the necessity of filling the lots in consequence of the change of grade.

Both parties introduced evidence bearing on the issues. The court instructed the jury, among other things, 1. That if it was necessary to fill up the lots in order to give plaintiff the proper use of them, defendant was liable for the cost of filling. 2. That in any event plaintiff was entitled to recover, for the cost of grading and filling the street, etc., $521.20, and also the amount of $740 paid for paving the street, with *interest* on each sum from the date of its payment. 3. That the rule of damages applicable to the case was, that plaintiff was entitled to recover "as much as it would cost him to put the premises in the same relative condition to the street after the filling, as they were before." 4. That if, in order to improve plaintiff's lots, there was no necessity for filling them, they should give him no damages for such filling.

The court refused to give the following instructions asked by defendant: 1. "The grading of the street, the paving of the street and gutters, and the planking of the sidewalks . . . were done under provisions of the charter of Milwaukee, which provided that such work should be done at the expense of adjoining property only to the extent that such property was actually benefited by the work, and which gave the property-

holders a right of appeal in case they felt aggrieved by the burden thus cast upon their property. You must therefore exclude from your estimate of damages the street-grading, paving and sidewalk-laying mentioned in the complaint." 2. "For the purposes of this case, both of plaintiff's lots are to be regarded as unimproved lots. The owner of an unimproved lot is not entitled to any damages by reason of a change of grade which does not deprive him of the use of any work already done by him or at the expense of his lot."

There was a verdict in plaintiff's favor for $3,121; and from a judgment thereon defendant appealed.

For the appellant there was a brief signed by *J. R. Brigham*, City Attorney, with *D. H. Johnson*, of counsel, and oral argument by *Mr. Johnson*. They contended, 1. That the court below erred in holding that the cost of grading and paving the street should be allowed to plaintiff as damages occasioned by the change of grade. The grading was done under an order of the board of public works, which was made to enable the plaintiff to do the work himself, and so escape the payment of the benefits which had been assessed against the property on account of such proposed grading. The amount assessed and paid for the pavement was merely the amount which that work was adjudged to benefit the lots. All these proceedings were in pursuance of sec. 21, ch. 401, P. & L. Laws of 1869, and secs. 23–25 of that act as amended by secs. 3–5, ch. 401, P. & L. Laws of 1870. (See *Johnson v. Milwaukee*, 40 Wis., 322, note.) The work was not done at the expense of the lots. For the whole amount expended by the plaintiff therefor, he has received compensation in the special benefits resulting to the lots from the work itself. He cannot, therefore, recover such amount in this action. *Johnson v. Milwaukee*, 40 Wis., 315; *Holton v. Milwaukee*, 31 id., 27, 43. 2. That the damages, costs and charges for which the city was made liable by sec. 18, ch. X of the charter of 1852, were not those occasioned by the old grade, or those caused by the new grade, but

French vs. The City of Milwaukee.

those caused by the *alteration* of the grade. It makes no difference whether the present grade was established by one ordinance or by two, unless in the latter case some damage was occasioned by, *the change*. In the case of an unimproved lot, if the grade is raised above the original level, and is again raised still higher, no damage is caused *by the change*, because it will cost no more to fill the lot to the new grade than it would have cost if that grade had been first established. But if buildings have been constructed, trees planted or other improvements made conformably to the first grade, an alteration of the grade involves, ordinarily, the loss of such improvements or the expense of readjusting them. There is a case in which a change of grade may injuriously affect an unimproved lot. If a grade is first raised above the original level of the land, and then lowered, or *vice versa*, the expense of filling or cutting to conform to the first grade would be lost on account of such change of grade. The instruction asked and refused upon this point was so drawn as to exclude this case.

For the respondent there was a brief by *Jenkins, Elliott & Winkler,* and oral argument by *Mr. Jenkins.*

Cole, J. It seems to us there is hardly a question in this case which has not really been considered and decided by this court in former adjudications. The action is brought under the provision of the charter, to recover damages occasioned to the plaintiff's property by a change in the grade of the street. There is no dispute about these facts, that the grade of the street in front of the plaintiff's lots was first permanently established at about five feet and eight inches above the level of the Milwaukee river as it was in March, 1836; that in 1856 the street was, by the owner of the lots, pursuant to the order of the proper officers, filled and graded to the grade so established, was paved with a substantial stone pavement and a proper sidewalk made, all at the expense of the lots; that in

1871 the city authorities changed the grade of the street, whereby the grade in front of the plaintiff's premises was raised six feet; and that in 1872 the plaintiff, in obedience to the orders of the city officers, filled the street to the new grade, at an expense of $521.20, and a pavement tax for paving the street upon the new grade was assessed against the lots and paid by plaintiff, amounting to' $740.

It was alleged in the complaint, that, by reason of the change of grade and the filling up of the street thereby required, access to the premises had been rendered difficult and inconvenient; and that, in order to make the premises accessible and fit for occupation, it was necessary to fill up the lots at least six feet. In its general charge the learned circuit court told the jury that the plaintiff was entitled to recover $521.20, the expense of filling the street to the new grade; also the amount of the pavement tax which had been assessed against the premises and paid for putting down the pavement on the new grade; and further, that if the evidence satisfied them that it was necessary to fill up the lots in order to make them useful to the plaintiff, whatever the proof showed it was worth or would cost to fill the lots, the plaintiff was entitled to recover in the action. The principal contention now is, whether the court was right in this charge, and in refusing to give an instruction asked by the learned city attorney on the trial, to the effect that the owner of an unimproved lot was not entitled to recover any damage by reason of a change of grade which did not deprive him of the use of any work already done by him, or at the expense of his lot.

It is insisted that the provision of the charter under which the action is brought does not warrant a claim for damages in case of an unimproved lot, upon which no filling or cutting has been done which will be lost by reason of a change of grade. Cases involving a construction of the provision in question have frequently been before this court. But this is the first time, so far as we are aware, when this precise inter-

pretation of the charter has been suggested. In most, if not all, of the cases, however, which we have had occasion to consider, the property alleged to have been injured by the change of grade was improved property. But it seems to us that the construction which the provision has received when applied to that class of property, settles the meaning which must be given it when applied to unimproved property. It will be borne in mind that the charter provides that when the grade of the street has once been established, and is afterwards changed, " all damages, costs and charges arising therefrom shall be paid by the city to the owner of any lot or parcel of land, or tenement, which may be affected or injured in consequence of the alteration of such grade."

There is surely no express exception in this language of an unimproved lot; nor do we perceive any satisfactory reason for holding that such property is excepted from the provision by necessary implication. The words are general, and embrace " any lot or parcel of land, or tenement," which may be affected or injured in consequence of the alteration of the grade. The argument of the learned city attorney is quite subtile on this point. I am not confident that I fully apprehend it. He says the damages, costs and charges for which the city is here made liable, are not the damages, costs and charges occasioned by the old grade, or those caused by the new grade, but only those caused by the *alteration* of the grade. It makes no difference, he says, whether the present grade of a street was established by one ordinance, or by two, unless in the latter case some damage was occasioned by the change. In the case of an unimproved lot, he observes, if the grade is raised above the original level, and is again raised still higher, no damage is caused by the change, because it will cost no more to fill the lot to the new grade than it would have cost if that grade had been first established. If by this counsel only meant to say that the labor and expense of filling a lot ten feet will be the same whether such filling is done in obedience to one or two

city ordinances, the remark is a truism. But that does not seem to meet the question at issue, which is, Has the lot been affected or injured in consequence of the alteration of the grade? In other words, has any new burden or expense been imposed upon it, or incurred by the owner, resulting from such change? Take the case at bar. A lot is filled five feet to bring it up to the established grade. The grade of the street is afterwards raised five feet more, and it becomes necessary, for the convenient use and enjoyment of the property, or to make the lot salable, that it be filled in five feet more to bring it up to the new grade. Is it not idle to say that such additional filling costs the owner nothing; that the lot has not been affected or injured in any way by the altered grade? The proposition seems too plain for argument, that additional cost and expense must be incurred by the owner in the case supposed, in order to have a profitable use of his property. By parity of reasoning it might be claimed that improved property was not injuriously affected by reason of the alteration of the grade, where the change made was in the direction of the first grade. For example, it might be said with the same propriety that if a man raised his house ten feet to bring it up to the grade first established, and afterwards had to raise it ten feet more to bring it up to the new grade, he had really lost nothing, and his property was not injuriously affected by the change, for the grade in front of his premises might have been established in the first place at twenty feet above the surface of the lot. The object of the provision is plain. It is intended to indemnify a party whose property is affected or injured by the alteration of a grade of a street, which has once been established by the city, for all damages to and charges arising from such change *(Church v. The City of Milwaukee,* 31 Wis., 512; *Stowell v. The Same,* id., 523); and this applies as well to an unimproved lot as to improved property.

Under the charge of the court the jury must have found that it was necessary, in order that the plaintiff might have a

convenient access to his lots, and a proper use and enjoyment of them, that they should be filled up to the new grade. Of course, under such circumstances, the city was bound to pay the expense of necessary filling. That expense was a proper item of damage. This is the doctrine laid down in the cases just cited; and it would seem needless to add that these cases do not affirm or sanction the preposterous rule that the owner is to be absolutely paid for filling or excavating his lot, in order to bring it to the same relative position to the new grade it had before, whether such excavation or filling would be a benefit or damage to the property. It is only the expense of filling which is necessary for the proper enjoyment of the property, that the city is bound to pay for. But this whole subject as to the doctrine of *Church v. Milwaukee* and *Stowell v. Same* is so fully discussed by Mr. Justice TAYLOR in *Tyson v. Milwaukee*, decided on the 27th of May last, that it is unnecessary to add a single word more on this point.[1]

The owner's remedy in this case was not by appeal, as was held in *Owens v. The City of Milwaukee*, 47 Wis., 461. It comes under the ruling in *Goodrich v. Milwaukee*, 24 Wis., 422, and *Church v. Milwaukee, supra.*

We have already said that the fact was admitted that the plaintiff, for filling the street and sidewalk in front of his premises to the newly established grade, incurred an expense of $521.20. He also had to pay a pavement tax assessed against his lots, for paving the street upon the new grade, of $740. Both these items he had to pay in consequence of the alteration of the grade, and therefore was entitled to recover these damages in this action. This disposes of all the material questions in the case.

*By the Court.* — The judgment of the circuit court is affirmed.

---

[1] In *Tyson v. Milwaukee*, a motion for a rehearing was not determined until September 21, 1880; and the case will be reported as of that date.—REP.