Tyson vs. The City of Milwaukee.

*May 12 — September 21, 1880.*

City of Milwaukee. *(1) Lot-owner's damages for change in grade of street. (2) Interest in such cases. (3-5) Who entitled to the damages. (6) City ordinance construed.*
Reversal of Judgment: *(7) Because not sustained by special verdict.*
New Trial: *(8) After reversal, left to plaintiff's option.*

1. In case of a change in the established grade of a street in the city of Milwaukee, by order of the common council, it is only where a change in the grade of adjacent premises, by cutting or filling, is thereby rendered necessary for their proper and convenient use, that the cost of such cutting or filling becomes a legitimate item of damages. *Church v. Milwaukee,* 31 Wis., 512, and *Stowell v. Milwaukee,* id., 523, explained.
2. Upon the amount of the lot-owner's damages from the change of grade in an adjoining street, he cannot recover interest for the period during which such damages remained unliquidated either by agreement or action.
3. Damages are not recoverable for a change of grade which is merely *ordered,* and not *made.*
4. Where, therefore, the common council, in 1864, ordered a change of grade of a street by filling, and in 1872 fixed the grade still higher, but no work was done until after the later order, one who purchased an adjacent lot after the earlier order, and owned it when the change was actually made, was entitled to recover the *whole* damage.
5. After the charges for regrading and repaving streets adjacent to a city lot, and making sidewalks upon the new grade, had become a lien upon the lot, the title of the owner was divested by a sale on foreclosure of his mortgage, and the amount of the lien was not paid by him. *Held,* that he was nevertheless entitled, as against the city, to the whole damages recoverable for the change of grade, including the charges above named.
6. The facts of this case being like those in *Goodrich v. Milwaukee,* 24 Wis., 439, it is *held,* in accordance with the decision in that case, that the

Tyson vs. The City of Milwaukee.

grade of Lake street in Milwaukee was established to the Milwaukee river by a city ordinance in 1853.

7. One who appeals from a judgment rendered upon a special verdict merely, without having excepted to either the findings of fact, the conclusions of law or the judgment itself, is entitled to a reversal, if the judgment is not sustained by the facts found, aided by other facts clearly established by undisputed evidence.

8. At the request of plaintiff's counsel, not objected to by defendant, this court, on reversing a judgment for plaintiff upon the ground that, on the special verdict and evidence, certain items of damage appear to have been erroneously included therein, directs that a proper judgment be .entered on the verdict, or a new trial allowed, at the plaintiff's option.

APPEAL from the Circuit Court for *Sheboygan* County. This action was commenced in the county court of Milwaukee county, and the venue changed to the circuit court for Sheboygan county. The case is thus stated by Mr. Justice TAYLOR:

"The plaintiff brought his action against the city of Milwaukee to recover damages he had sustained by reason of the change of grade of the streets in front of his lots in said city.

"The complaint states two causes of action: one for a change of grade of the streets adjoining the plaintiff's lots extending to the river, and which had been used as dock property before the change of grade; and one for the change of grade of the streets adjoining plaintiff's lots across the street, in the rear of the dock property. The claim for damages to the last mentioned lots is, in the complaint and case, called the plaintiff's second cause of action. The action was tried by a jury, and a special verdict was rendered, upon which the plaintiff had judgment for the sum of $15,868.23.

"It will only be necessary to examine the following findings in order to understand the objections made by the appellant to the judgment rendered thereon:

"'*Fifth.* Is it necessary, for the use of the premises in the second cause of action in the complaint described, that they should be filled up to the changed grade? *Ans.* No.

" ' *Sixth*. What will it cost to fill up to the new grade the premises in the second cause of action described, at 35 cents a cubic yard? *Ans.* $1,864.80.

" ' *Thirtieth*. Was the market value of the property south of South Water street increased or diminished by the change of grade, and to what amount was it so increased or diminished? *Ans.* Not increased or diminished.'

" The thirtieth question refers to the premises mentioned in the fifth and sixth questions.

" ' *Fifteenth*. Is it necessary, for the use of the premises described in the first cause of action in the complaint, that they should be filled up to the changed grade of South Water street, as established by the ordinance of 1872? *Ans.* No.

" ' *Twenty-third*. Were said dock premises, remaining at the same elevation as before, lessened in their market value by reason of the change of grade of South Water street in 1872? *Ans.* Yes.

" ' *Twenty-fourth*. To what amount were they so lessened in their market value? *Ans.* $7,500, total damage.

" ' *Twenty-fifth*. Did the plaintiff purchase the property described in the complaint after the ordinance of July, 1864, mentioned in the complaint? *Ans.* Yes.

" ' *Twenty-sixth*. Was the grade ordained by the ordinance of 1864 six feet higher than that of 1853? *Ans.* Yes.

" ' *Twenty-seventh*. What is the maximum difference between the grade as ordained by the ordinance of 1864 and that of 1872? *Ans.* One and a half feet.

" ' *Twenty-eighth*. Did the plaintiff pay the assessments for the street work mentioned in the complaint? *Ans.* No.

" ' *Twenty-ninth*. Was the property described in the complaint sold upon foreclosure of a mortgage in 1875, the assessments for street work being yet unpaid? *Ans.* Yes.

" ' *Thirty-first*. As to the property south of South Water street, has it been improved for any purpose otherwise than by filling it to the grade of 1853? *Ans.* No.

" ' *Thirty-second.* Was the ordinance of 1864 ever enforced, or the street raised to the grade thereby established, prior to 1872? *Ans.* No.'

"Upon motion of the plaintiff, the court rendered judgment in his favor, amongst other things, for the sum of $1,864.80, the amount which the jury found it would cost to fill up to the new grade the premises described in the plaintiff's second cause of action, in answer to the sixth interrogatory; and also for the sum of $3,203.48 for interest on the sum of $7,500, the amount which the jury found was the total damage to the dock property by reason of the change of grade, in answer to the twenty-fourth question. The interest was calculated on said sum of $7,500 from January 1, 1873, to the time of the entry of the judgment, and was included in the judgment.

"The defendant appealed from the judgment, and alleges that the court erred, *first*, in allowing the plaintiff the two sums of money above mentioned as a part of his damages; *second*, in refusing to take a special verdict as to the cost of raising the grade one and one-half feet, the difference between the grade of 1864 and that of 1872; *third*, in giving judgment for the cost of the street work assessed upon the property in question, and interest thereon; *fourth*, in giving judgment for the cost of grading the premises described in the plaintiff's second cause of action, for the reason that said premises had never been improved otherwise than by filling them to the grade of 1853, and therefore the necessity for such grading could not have been caused by a change of street grade; *fifth*, in allowing damages for an assumed change of grade of the extension of Lake street, from South Water street to the river, because the grade of said section of street was never changed at all."

There was a brief for the appellant by *D. H. Johnson*, of counsel, with *J. R. Brigham*, City Attorney, and one for the respondent by *Jenkins, Elliott & Winkler;* and the

cause was argued orally by *Mr. Johnson* and *Mr. Jenkins.*

For the appellant it was contended, among other things, that it was error to allow the recovery of interest on the sum of $7,500, the amount which the dock property was lessened in value.   Interest is not recoverable on unliquidated demands.   Sedgwick on Dam., 377; *Marsh v. Fraser,* 37 Wis., 149; *Yates v. Shepardson,* 39 id., 173.   The amount of the claim could not be ascertained by mere computation.   Nor is this an action *ex delicto.*

Upon this point it was argued in behalf of the respondent, that it was the object of the charter to secure to property-owners full compensation for whatever damages they might sustain by changes of grade.   *Church v. Milwaukee,* 31 Wis., 521.   The right accrues at the time the injury is done. *Pratt v. Brown,* 3 Wis., 617.   Full compensation can only be made, therefore, either by payment at the date of the actual change of grade, or by payment at a subsequent date with interest added.   These proceedings are akin to the exercise of the right of eminent domain; and in such case interest is always allowed upon the damages from the date of taking. *Warren v. St. Paul,* 21 Minn., 424; *Knauft v. R. R. Co.,* 22 id., 174; *Delaware v. Burson,* 61 Pa. St., 381; *Young v. Harrison,* 19 Ga., 39; *Railroad v. McComb,* 60 Me., 302; *Reed v. Railroad,* 105 Mass., 305; *Whitman v. R. R. Co.,* 7 Allen, 327; *Metter v. R. R. Co.,* 37 N. J. L., 226; *Railroad v. Owens,* 8 Kan., 417; *Railroad v. Railroad,* 34 Vt., 65; *Parks v. Boston,* 15 Pick., 208.   It was held in Massachusetts, under an act giving damages to lot-owners for alterations in streets, that interest should be allowed.   *Edmands v. Boston,* 108 Mass., 535.   This court has repeatedly held that interest may be recovered on the value of property wrongfully destroyed, at least from the commencement of the action.   *Chapman v. R. R. Co.,* 26 Wis., 295; *McArthur v. R. R. Co.,* 34 id., 140; *McNarra v. R. R. Co.,* 41 id., 69; *McHugh v. R. R.*

Tyson vs. The City of Milwaukee.

*Co.*, id., 76. And it seems that it may be allowed from the date of the injury. *Kellogg v. R. R. Co.*, 26 Wis., 241; *Whitney v. R. R. Co.*, 27 id., 348; *Tenney v. State Bank*, 20 id., 152; *Ingram v. Rankin*, 47 id., 406. It is so held in Illinois. *Bradley v. Geiselman*, 22 Ill., 494; *Railroad v. Schultz*, 55 id., 424.

TAYLOR, J. We think the exception taken to the allowance of the sum of $1,864.80 for filling the plaintiff's lots, described in his second cause of action, is well taken. The findings of the jury expressly negative the idea that there was any necessity for such filling in order to render the lots useful, and the answer to the thirtieth question, as above quoted, expressly negatives the idea that the lots were damaged at all by the raising of the grade of the street in front of these lots. The plaintiff was allowed the sum of $1,792.78 for the cost and expense of grading, paving, guttering, and making sidewalks on, the streets abutting these premises, and interest thereon from the 26th of January, 1874, being the sum which had been charged to said lots for doing said work. The evidence showed that the plaintiff had not done any of the work himself, but that it had been done at the expense of the ward and charged as a tax upon the lots; and it also showed that the streets had been raised up to the grade established in 1872, and the pavements, gutters and sidewalks made upon the raised grade. The allowance of this last named sum to the plaintiff was a full compensation for all charges made against his property for the work of putting the streets and sidewalks on the changed grade. If, therefore, the plaintiff claimed any further damages on account of the change of grade, it was incumbent on him to show how he had suffered such damage; but the jury expressly find, by their answer to the thirtieth question, that he did not suffer any further damage, because they say his lots were worth just as many dollars after the grade was raised in front of his lots as they

were before, and, by their answer to the fifth question, they find that it is not necessary for the use of these lots that they should be filled.

The statute which gives the plaintiff his right of action, and upon which he must rely to recover any damage at all, simply provides that, "when the established grade shall be thereafter altered, all damages, costs and charges arising therefrom shall be paid by the city to the owner of any lot or parcel of land or tenement which may be affected in consequence of the alteration of such grade." All the costs and charges spoken of in said act were covered by the sum allowed the plaintiff for grading, paving, guttering, and making the sidewalks upon the changed grade; and the jury found that when such work was completed plaintiff's lots were just as valuable as they were before the grade had been changed. Under these findings it would seem to follow as a most logical conclusion, that when the plaintiff was refunded the cost of such work, with interest, he would be fully compensated for all the damage done to his lots by the altered grade. Why, then, should the city be called upon to pay the plaintiff the further sum of $1,864.80 as damages? Certainly, according to the finding of the jury, he has not suffered that damage, and the allowance of it is, apparently, simply absurd. The filling has not been done by the plaintiff, and the title to the premises has been transferred to other parties.

If the plaintiff gets this sum from the city, it will not be expended by him in filling the lots. If the jury have not made a mistake in their findings of fact, we must presume that the premises were sold for just as much as they would have sold for if the grade had not been changed, less the sum charged for the work above mentioned, and for which the plaintiff has already been allowed full compensation. If, therefore, the plaintiff recovers the $1,864.80 allowed him by the court in this case, he certainly does not recover it because he has suffered that amount of damage in addition to the other sums

allowed, but upon some supposed rule of assessing damages in actions of this kind, which entitles the plaintiff to recover the cost of the work of such filling, whether it be necessary or not, whether such filling would add one dollar to the value of the lots or not, and, in fact, even though such filling would lessen the value of the lots for any and all purposes. It is gravely asserted by the learned counsel for the respondent, and qualifiedly admitted by the counsel for the appellant, that this absurd rule of damages has been established by this court in actions of this nature; and on the part of the respondent it is insisted that its justice or propriety cannot, therefore, be inquired into.

This rule is said to have been establihsed by this court in the cases of *Church v. City of Milwaukee*, 31 Wis., 512, and *Stowell v. Same*, id., 523. After a careful reading of these cases, I am unable to find any justification for this assertion in either of them. The only questions determined in these cases were: *first*, that the words " costs " and " charges," in the act of 1852, included the cost and expenses of filling or excavating the street to the altered grade, and the cost of paving, guttering, and making the sidewalks upon such new grade; *second*, that upon the question of damages the statute was simply intended to compensate the party whose property was affected or injured by the alteration of the grade for all damages, costs and charges arising from such change; *third*, that when *it became necessary*, by reason of the altered grade, to change the surface of the premises, either by filling or cutting them down, to adjust them to the altered grade, the cost of such change of surface was to be taken into consideration in estimating the plaintiff's damages; and *fourth*, that the city had the right, by way of recoupment, to set off against the plaintiff's damages the increased market value of the premises, if there were any such increased value which accrued to the premises in common with other lots in its locality affected by the grade, but not including any benefits peculiar to the plaint-

iff's property and not common to other property in the neighborhood.

In the case first cited, Justice COLE, speaking of the statute which gives the plaintiff his right of action against the city, says: "The objects and intent of the provisions are plain and unambiguous; and they are to simply indemnify a party whose property was affected or injured by the alteration of a grade of a street which had once been established by the city, for all damages, costs and charges arising from such change. The legislature were well aware that owners of property in the city would arrange the surface of their lots and make their improvements with reference to the grade of the adjoining streets. And when the power to establish the grade of a street was a continuing power in the common council — as it was under the charter,— it was frequently exercised to the great loss and injury of lot-owners who had thus improved their property and adjusted all the surroundings to the established grade. The object was to protect these parties, and to secure to them full compensation for whatever damages they might sustain by a change of the grade. If a *change in the premises became necessary* — as a cutting down of the surface of the lot or filling it up, raising or lowering of the buildings and walls,— whatever expense was incurred in adjusting the premises to the same relative position to the street after the change of grade as before, was to be allowed. But where premises were appreciated in marketable value in common with all other property in the locality affected by the grade, the city should have the advantage of this increased value. It was proper that these general benefits which the plaintiff's property had in common with the other property on the street, should be deducted or set off against the damages." After some other remarks, he says: "For he was entitled to the enjoyment of his property in the condition in which it stood before the alteration of the grade; *and if he was compelled to lower his lot by reason of this alteration*, the charter

secured to him the cost and expense of the work. . . . If any one's *premises are injured by the grade,* he has no reason to complain, providing his actual loss is made good. And if the amount which the premises are actually diminished in value by reason of the grade, is added to the cost and expense of putting them in the relative position to the street after the change that they were before, the owner is fully indemnified within the intent of the charter. . . . And it is manifest, in determining the amount which the plaintiff's lot and improvements were lessened in value, it was proper for the jury to consider the nature and condition of the property before and after the grade, and any advantages and benefits which might be conferred upon it in common with other property on the street affected by the grade."

Again, in the case of *Stowell v. City, supra,* Justice COLE says:

"The object of the provision was to make the lot-owner whole for any damage or expense he might sustain in consequence of the change of grade. If he had to lower his house, or grade down his lot, so as to make it accessible and conform to the grade of the street, the expense of doing this was chargeable to the city. If his property was impaired in value, or injured in any way, this was to be made good to him. And if he was put to the expense of grading the street and sidewalks, this also was an item which he was entitled to recover with his damages.

"It appears that the plaintiff had not adjusted his premises to the changed condition of the street, but the court directed the jury that he was entitled to recover as much as it would cost him to put them in the same relative position to the street after the cutting as they were before. It follows from what has been said that there was no error in this portion of the charge, for the reason that, if the *lowering of the house and lot became necessary,* the city was liable for the actual expense of putting the property in *statu quo.*"

A few sentences in these opinions of Justice COLE are separated from that which precedes and follows them, and upon consideration of such detached sentences it is claimed that the court intended to decide that in all cases and under all circumstances the plaintiff was entitled to the cost and expense of filling or cutting down his premises so as to adjust them to the same relative position to the altered grade that they held to the former, no matter whether such cutting or filling would add to or take from the value of the premises when so filled or cut down; that the plaintiff is absolutely, in all cases and under all conditions, entitled to the enjoyment of his property in the relative condition as to the street in which it stood before the change of grade. If the plaintiff's premises were five feet below or twenty-five feet above the original grade, and the alteration cut down the street in the one case to the level of his lot, or raised it in the other to within ten feet of the surface, the owner in the first case would be entitled to the expense of excavating his lot five feet, and in the other filling it fifteen feet, in order to bring it to the same relative position to the new grade, whether such excavation or filling would benefit or damage the lots, and notwithstanding such excavation or filling might be a nuisance both to the public and his neighbors.

The absurdity of this rule was recognized by the learned council for the respondent in the rule he adopted in this case in estimating the plaintiff's damages to the dock property. As to that property, the evidence clearly showed that the filling of the lot would ruin it for the uses to which it had been put by the plaintiff before the change of grade, and would not increase its value for any purpose it could be put to, beyond what it would still be worth as dock property; and he therefore very properly and wisely took as the measure of his damages the decrease in the value of the property as dock property. The rule in these cases was properly stated in the first part of the opinion of Justice COLE above quoted:

" When, by a change of grade in the street, a change in the premises becomes necessary, either by cutting down or filling up the premises, then the cost of such cutting or filling is a legitimate item of the damages." The change of the surface of the plaintiff's premises does not always become necessary because of a change in the grade of the street. It only becomes so necessary when the proper and convenient use of the premises renders such change necessary; and when the proper and convenient use of the premises after the change of grade of the adjoining street does not require any cutting or filling, then the cost thereof does not form a necessary item of the plaintiff's damages.

In the cases above cited there was no dispute as to the necessity of changing the surface of the plaintiff's lots in order to render their occupation convenient and useful after the change of grade; and the decisions must be read in connection with the facts and circumstances surrounding the cases. As the jury have found in this case that the use of these premises did not require that the same should be filled, and that they were worth just as many dollars after as before the grade of the street was changed, we can see no reason why the plaintiff should be paid the expense of filling them.

We are also of the opinion that the court erred in allowing interest on the $7,500 allowed as damages on the dock property. We do not think that the same rule should be adopted in this case as in cases of taking private property for a public use, under the provisions of the constitution. In such cases the property can only be taken on making just compensation, and the initiative for determining the amount of such compensation is to be taken by the authority which seeks to appropriate the property; and in case such property is taken by corporations, except municipal corporations, the compensation is to be paid before the property is taken. In all such cases it is but simple justice that the party taking the property of the citizen should pay the value with interest

from the time of the taking, when any delay has occurred in the legal proceedings necessary to ascertain such value.

In the case at bar, and in all similar cases, the plaintiff's right is not one which he has at common law, nor one secured to him by the constitution. It is given by the grace and favor of the legislature, and is undoubtedly a meritorious cause of action, and one which was wisely given to prevent oppression and injustice on the part of the local government of the city. But it is a cause of action for damages, and damages which are, in their very nature, unliquidated, and about the *quantum* of which there is always dispute and honest disagreement; and the only way of liquidating the damages, when the parties differ, is by resort to a court and jury. The defendant has no means of forcing a liquidation of the plaintiff's damages. It has no power to bring the plaintiff into court for that purpose. The plaintiff, in case of a difference of opinion, must take the initiative, and it would be clearly unjust to charge the defendant interest on this unliquidated demand so long as the plaintiff takes no steps to liquidate the same. Within the rule established by this court, interest upon a demand which is in its nature uncertain, and which has not been liquidated by agreement of the parties, does not draw interest until the amount has been fixed by the court or jury. This rule, we think, is fully settled by this court in all cases arising upon contract, express or implied; and as the plaintiff's damages in this case do not arise out of any tortious or wrongful act of the defendants, the rule above stated must be applied to this and other cases arising under the provisions of the defendant's charter, giving compensation for damages to the parties whose property is affected by a change of grade of its streets. In cases of this kind it is usually the fault of the claimant if the damages are not settled by the verdict of a jury within a reasonable time, when it becomes necessary to resort to legal proceedings to settle the same; and there is no injustice in holding that in-

terest shall not be recoverable in such actions for those damages which are unliquidated.  See *Marsh v. Fraser*, 37 Wis., 149; *Yates v. Shepardson*, 39 Wis., 173; *Shipman v. State*, 44 Wis., 458.

It is urged by the learned counsel for the appellant, that the plaintiff should not have been allowed any damages, except such as accrued by reason of raising the grade one and a half feet higher than the grade established by ordinance in 1864.   The argument is, that as the defendant did not buy the property until the grade was established in 1864, the then owner of the premises would be entitled to recover the damages which would accrue to the lots by reason of raising the streets to the grade as then established.   This argument would have great weight, and probably be conclusive, if it had been shown that the streets were, in fact, graded up to the height fixed by the grade of 1864, before the plaintiff purchased the lots; but the evidence shows that no action was ever taken to grade the streets under the ordinance of 1864, previous to 1872; that in 1872 the council again passed an ordinance fixing the grades of the streets at one and a half feet higher than was fixed under the ordinance of 1864, and, under the last ordinance, the grading, paving, etc., was done; and that the plaintiff became the owner of the lots before any of such work was in fact done.

We think it very clear that no damage accrues to the owners of lots in the city of Milwaukee, under the statute above quoted, by the mere passage of an ordinance changing or altering the grade of any of its streets; and that it is the change of the grade in fact which gives the cause of action.   An ordinance of the city council is always subject to revision and repeal; and if the passage of an ordinance gave a right of action for damages in cases of this kind, we would have the anomaly of a party recovering damages for acts which might never be performed.   In *Feiten v. The City of Milwaukee*, 47 Wis., 494, this court held that a party suffering in-

cidental damages by reason of proceedings lawfully taken to condemn property for a public use, could not recover against the city if such proceedings were lawfully discontinued or abandoned by the city. The principle of that case is applicable to this; and if there were any doubt as to the meaning of the language of the statute, we should feel bound to give it a construction which would limit the right of action to damages suffered by the actual change of the grade, and not extend the right to recover to those consequential damages which an owner might suffer from the mere threat of the city to change the grade in front of his lots.

As the entire change of grade complained of was in fact made under the ordinance of 1872, it does not affect the plaintiff's right to recover, that there had been an ordinance passed providing for a partial change of such grade, but which remained unexecuted when the plaintiff became the owner.

The fact that the lots of the plaintiff were sold upon the foreclosure of a mortgage which he had given, and after the work of grading, paving, etc., of the lots was completed, does not, we think, bar the plaintiff from recovering the damages accruing by reason of the change of grade during his ownership. It is true, he did not pay the costs and charges of making the grade, or paving the streets, or making sidewalks upon the new grade; but the cost of doing the work had been charged to the lots, and was a lien thereon, as we are bound to presume, at the time of the foreclosure sale, superior to the claim of the mortgagee. The purchaser at that sale took the property subject to that lien, and is presumed to have purchased with the understanding that that lien must be discharged by him before he would acquire a title under his purchase; and the purchase price would therefore be just as much less as the amount of the lien to be discharged. So, if the raising of the grade lessened the value of the lots, it is to be presumed that the purchaser took that fact also into consideration, and that his bid was controlled by such decreased value.

We think the fact that the property was mortgaged at the time the change of grade was made, does not affect the right of the mortgagor to recover of the city the damages caused by the change. If the security of the mortgagee be impaired by a change of grade affecting property included in his mortgage, it may be that, in equity, he would be entitled, as between himself and the mortgagor, to claim that the damages recovered should be applied to the payment of his mortgage debt; but that question does not arise in this case.

The point made by the learned counsel for the appellant, that the owner of unimproved lots cannot recover, under the statute, for a change of grade of the streets adjoining, is discussed and determined in the case of *French v. The City of Milwaukee*, 49 Wis., 584, and need not be further commented on in this case.

The objection that the plaintiff ought not to recover for the change of grade of Lake street from South Water street to the river, for the reason that as to that part of the street the grade had never been changed, because it had not been established by the grade of 1853, is controlled by the case of *Goodrich v. Milwaukee*, 24 Wis., 439. The facts in the two cases are alike. It must be held, therefore, that the grade of Lake street was established to the river by the ordinance of 1853.

It is insisted by the learned counsel for the respondent, that the appellant ought not to be permitted to question the right of the plaintiff to the judgment for the cost of filling the premises described in his second cause of action, and for the interest on the $7,500 damages to the dock lots, because he did not except to the judgment specially upon these grounds. We think proper practice does not require the person against whom a judgment is rendered upon a special verdict, to object to the judgment in order to entitle him to show upon an appeal that the judgment is not supported by the verdict. If neither the facts found nor the undisputed evidence in the

case support the judgment, it must be reversed, whether objections or exceptions to the judgment be taken by the losing party or not.  A judgment entered upon a special verdict is to be treated, in this respect, the same as a judgment entered upon findings of fact when the case is tried by the court without a jury; and in such case this court has repeatedly held that if the conclusions of law which are embodied in the judgment are not supported by the findings of fact, the judgment will be reversed upon appeal, though no exceptions be taken either to the findings of facts, conclusions of law or judgment.    *Wisconsin River Improvement Co. v. Lyons*, 30 Wis., 61; *Blossom v. Ferguson*, 13 Wis., 75; *Brant v. Salisbury*, 23 Wis., 515; *Westfield v. Sauk Co.*, 18 Wis., 624; *King v. Ritchie*, id., 554; *Boyce v. Foote*, 19 Wis., 199.

The counsel for respondent requested that, in case the judgment should be reversed because it contained any items of damages not authorized by the special verdict, the cause should be remanded with leave to the respondent to enter judgment on the verdict for the amount which this court should find he was entitled to, or, at his option, to take a new trial in the case; alleging, as a reason for this request, that upon the former trial the plaintiff had inadvertently omitted to prove certain items of damage to which he was clearly entitled.   We did not understand that the learned counsel for the city made any objection to this request, and it is therefore granted.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment upon the verdict in accordance with this opinion, or for a new trial, at the option of the plaintiff.

The foregoing opinion was filed May 27, 1880.   A motion for a rehearing was denied September 21, 1880.